[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
The Department of Children and Families (DCF) has filed neglect petitions concerning Dustin C. (d.o.b. September 22, 1988) and his brother, Brian C. (d.o.b. October 26, 1989). The respondents in these cases are the children's biological parents, Louise C. and Fred C., and their maternal grandmother and legal guardian, Sally A. Sally A. had previously received guardianship of Dustin and Brian from a local probate court, and both children had been living with her since 1990.
Pursuant to the provisions of C.G.S. § 46b-120, DCF has alleged that each child was abused, was denied proper care and attention, and was permitted to live under conditions, circumstances or associations injurious to his well being.
PROCEDURAL CONTEXT
The petitioner requested and received orders of temporary custody for each child from the Superior Court for Juvenile Matters in Montville on August 22, 1996. On that date, DCF also filed the neglect petitions which are the subject of this action.
The OTCs were issued after Dustin claimed that he had been CT Page 7425 sexually molested by Alfred A., the husband of Sally A. At the time the allegation was made, Dustin was visiting in North Carolina at the home of his biological mother, Louise C. The child was interviewed on August 2, 1996 by North Carolina authorities, who notified DCF in Connecticut. Dustin returned to this state on August 10, 1996 and was thereafter interviewed by DCF investigator Theresa Bohara. In his statements to the child welfare workers in both states, Dustin alleged that he had been sodomized by Alfred A. Ms. Bohara requested a medical examination of the child, which revealed physical evidence that Dustin had been repeatedly sexually abused. Following the physical examination, DCF sought the OTCs on both children. Dustin and Brian have been continuously in state care since August 22, 1996.
The court in Montville has previously confirmed that there was appropriate service and notice to both of the biological parents, and the legal guardian. The case was subsequently transferred to this venue, where trial was held on July 7-8, 1997. The legal guardian, Sally A., attended the trial and was represented throughout the proceeding by her attorney. DCF, and the minor children, were represented by their counsel during the entire trial. Neither of the biological parents participated in the proceeding, and they were not represented by counsel.
At trial, the petitioner submitted eight full exhibits into evidence and introduced the testimony of the following witnesses:
1. Robert Korn, M.D., Lawrence Memorial Hospital;
2. Dr. Lawrence Ash-Morgan, United Services;
3. Theresa Bohara, investigator, DCF;
4. Karen Salomon, social worker, DCF.
Sally A. testified on her own behalf during the neglect trial and offered four full exhibits into evidence. Counsel for the minor children did not introduce evidence or testimony.
FACTUAL FINDINGS
The court, having carefully considered all of the evidence and testimony adduced at trial, makes the following findings of fact: CT Page 7426
Dustin and Brian have resided with Sally A. since 1990 when a probate court removed them from the custody of Louise C. and designated Sally A. as their legal guardian. Also residing in the maternal grandmother's home were Alfred A. (Sally A.'s husband of 18 years) and the couple's children, Elijah and Allison. Dustin refers to Alfred A. as "Daddy."
In July 1996, Sally A. took Dustin and Brian on a trip to North Carolina to see their biological mother, Louise C. Alfred A., Elijah and Allison also went on this trip. Dustin remained in North Carolina for an extended visit with his mother and the rest of the family returned to Connecticut. While in North Carolina, Dustin informed his biological mother that he had been sexually molested by Alfred A. North Carolina child welfare authorities were informed, and Dustin was interviewed. On August 2, 1996, Dustin told Tammy C. Burcham, a social worker with the Surry County Department of Social Services, that he did not like living with "daddy" because "he stuck his ding-ding in his butt." (Petitioner's Exhibit 7, Page 1). The report indicates that Dustin, who is mildly to moderately mentally retarded, uses the expression "ding-ding" to refer to a penis. (Petitioner's Exhibit 7, Page 1).
Ms. Burcham faxed a report of her interview to DCF in this state. It also indicated that Dustin initially denied that Alfred A. had ever molested Brian, but then said that "daddy stuck his ding-ding in Brian's butt." (Petitioner's Exhibit 7, Page 1). DCF began an investigation in Connecticut. Dustin returned to this state in August 1996 and was interviewed by Ms. Bohara of DCF on August 14th. Ms. Bohara's report notes:
 "At this time, worker met with Dustin and interviewed him about his statements in the referral. Worker asked Dustin what he told the social worker from North Carolina and his mother to which point he stated that "Daddy put his ding-ding in my butt." He later changed this statement to "Daddy put his dingy in my butt." When worker questioned him as to what else happened, he responded "don't know." Worker asked him if this happened to Brian as well but he responded "only to me." He also indicated that he had told this to his grandmother. When worker asked when this had happened, he stated that it happened when he was seven years old. He also told this worker that his father "haven't done CT Page 7427 lately." He also said that the incident happened "in my bedroom at night time." He also stated that he had told his DMR counselor, Peter, while on the beach."[1] (Petitioner's Exhibit 6, Page 8).
A physical examination of the child was not conducted in North Carolina. Dr. Robert Korn, a physician at Lawrence Memorial Hospital in New London, examined Dustin on August 21, 1996. Dr. Korn, who is board certified in the areas of emergency medicine, pediatric medicine, and emergency pediatric medicine, is the chairperson of the hospital's emergency department. He concluded that Dustin had been the victim of repeated sodomization and rendered the diagnosis of "chronic sexual abuse." (Petitioner's Exhibit 2). Dr. Korn's report of the examination notes:
 "This child has clearly been subjected to inappropriate sexual behavior. The issue of whether penile/rectal penetration has occurred is an important one. The presence of a lax sphincter as well as fat tissue atrophy is presumptive evidence of penetration. However, the most concerning feature of this child was his behavior during the rectal examination, which revealed inappropriately high tolerance for manipulation of the rectal area. This is consistent with prior multiple rectal penetrations." (Petitioner's Exhibit 2).
In a subsequent letter under date of March 27, 1997 to DCF social worker Karen Salomon, Dr. Korn indicated:
 "Physical examination of this patient was consistent with chronic rectal penetration. By chronic, I mean specifically that there had been repeated penetration of this child's rectum. There was no evidence of recent penetration. Again, by way of clarification, I can exclude sodomization within the previous four to eight weeks. Unfortunately, findings such as this would indicate multiple penetration events, over a period of years. This was evidenced by poor rectal tone and loss of subcutaneous tissue around the rectal sphincter. Additionally, the child's behavior was very consistent with chronic sexual assault and not consistent with a recent/new sexual assault within the two months prior to his examination by me." (Petitioner's Exhibit 3). CT Page 7428
During cross examination, Dr. Korn said that his statement in the forgoing letter that the sodomy occurred over "a period of years" was incorrect. He testified that the physical evidence indicated Dustin had been rectally penetrated over a period of months (possibly up to one year) prior to the examination. The physician opined that the sexual assaults occurred over an extended period of time prior to the examination, and before the child visited in North Carolina. Dr. Korn based this opinion on the absence of evidence of acute trauma — such as tearing, redness or sphincter damage — which would have indicated recent sexual abuse. Dr. Korn also testified that he was "convinced without a doubt" that Dustin had been sexually abused.
The respondent Sally A. vigorously contested Dr. Korn's conclusion that the sexual assaults predated Dustin's visit to North Carolina. She testified that, despite her request, no physical examination of Dustin was conducted while the child was still in North Carolina. The maternal grandmother also testified about Dustin's lack of credibility, and claimed that the child told her the names of several persons who may have sexually abused him while he was visiting his natural mother in North Carolina.[2] Sally A. admitted, however, that she never provided those names to DCF. The court has considered, but is unpersuaded by the respondent's testimony in this regard.
The court accepts the medical findings and opinions of Dr. Korn as proven facts in this case. They independently corroborated Dustin's initial complaints to North Carolina and Connecticut child welfare officials that he had been sodomizied. They also proved that the sexual abuse occurred on a number of occasions over a period of months prior to the North Carolina visit, and corroborated the child's claim that he had been abused when he was seven years old.
Dustin, who will be nine years old in September, is mentally retarded, and has been diagnosed with attention deficit disorder. (Petitioner's Exhibit 8, Page 5). Brian, age seven, is also developmentally challenged. Dr. Bruce Freedman, the court-appointed psychologist who evaluated both children, estimated that Brian's intelligence level ". . . to be low in the range of mild mental retardation." (Respondent's Exhibit A, Page 5). Dr. Freedman commented in his written report on the ability of both boys to accurately report information: CT Page 7429
 "Dustin also showed signs of substantial mental retardation and would be a difficult child to interview for factual reliable information. As with his brother, only medical evidence would be a sufficient method of determining any abuse. Extreme caution should be used in assigning credibility to his account of sexual abuse of other specific incidents." (Respondent's Exhibit A, Page 6).
With the exception of Dustin's statements, there was no evidence at trial indicating that Brian had been sexually abused. Brian denied that he had been molested when interviewed by DCF in August 1996. Brian's foster mother has indicated that he has difficulty distinguishing truth and falsehood. No physical examination of Brian was conducted. Dr. Freedman opined in his January 1997 report that sexual abuse of Brian ". . could be determined only through medical exam." (Respondent's Exhibit A, Page 4).
Around the time that the OTCs were issued, Sally A. told Alfred A. to leave the family home. He complied, but the respondent allowed him to return that same evening because he had no place to stay. Sally A. subsequently obtained a restraining order from the Superior Court in Norwich. (Respondent's Exhibit B). In the application for that order, which was issued on September 25, 1996, Sally A. stated to the court that "[Alfred A.] needs to remain out of the house until the allegations of sexual abuse are resolved. Until that time, there is a safety concern to both Elijah and Alison." (Respondent's Exhibit C, Page 2). This restraining order expired in March 1997. Sally A. did not seek to renew it, and resumed residency with her husband in the family home when the restraining order terminated. She still lives with him. Alfred A. was arrested on May 6, 1997 on charges of Sexual Assault First Degree (C.G.S. § 53a-70), and Risk of Injury to a Minor (C.G.S. § 53-21). (Petitioner's Exhibit 1). Both felony charges stem from the allegations that he sexually assaulted Dustin. Those charges were still pending at the time of this neglect trial.
ADJUDICATION
The court is mindful of the evidence and testimony presented by both sides concerning Dustin's limitations and credibility. However, compelling medical evidence in this case proved that he had been the victim of multiple sexual assaults which were CT Page 7430 committed over a period of months (for possibly as long as a year) prior to the physical examination, and before the visit to North Carolina. As noted above, this evidence corroborates Dustin's complaints that he had been sodomized, and that the assaults occurred when he was seven years old. The court finds that Dustin was repeatedly sexually assaulted during a period of time when both subject children were in the care and custody of their legal guardian, Sally A. The court further finds that the sexual molestation of Dustin was perpetrated by a person or persons who obtained access to the child while he was residing with his grandmother. The court also finds that both of these young and developmentally challenged children were exposed to the danger of being sexually molested while they were in the care of Sally A., and that the legal guardian did not protect them from this risk of harm.
Accordingly, after consideration of all of the evidence and testimony adduced at trial, the court finds that the petitioner has proven by a preponderance of the evidence that Dustin C. was abused, was permitted to live under conditions, circumstances or associations injurious to his well being, and was denied proper care and attention, physically, emotionally or morally, all as alleged in the petition under date of August 22, 1996.
The court does not find that DCF has met its burden of proof with respect to the allegation that Brian was abused. That count of the neglect petition concerning Brian C. is hereby dismissed.
The court does find that the petitioner proved by a fair preponderance of the evidence that Brian was permitted to live under conditions, circumstances or associations injurious to his well being, and that he was denied proper care and attention physically, emotionally or morally, as alleged in the August 22, 1996 petition.
The court hereby adjudicates Dustin C. and Brian C. to be neglected children.
DISPOSITION
The petitioner and the attorney for the minor children both advocate that Dustin and Brian be committed to DCF. The respondent Sally A. has requested that both children be returned to her care under protective supervision. In support of that position, the grandmother offered the recommendation of the court-appointed psychological evaluator, Dr. Freedman. The CT Page 7431 psychologist recommended in his January 8, 1997 report that the grandmother, who "showed a good level of skill in handling the boys," be reunited with the children in her home under a period of protective supervision by DCF. (Respondent's Exhibit A, Pages 7 and 10). Dr. Freedman opined that Sally A. had "provided well for the care of these two boys" and "had a good manner of handling the boys at their level." (Respondent's Exhibit A, Pages 7 and 8).
It is clear, however, that Dr. Freedman's recommendation of restoring Dustin and Brian to their grandmother's care under protective supervision was predicated upon his belief that Alfred A. no longer resided in the legal guardian's home. Dr. Freedman noted in his report that "Grandmother had appeared at first to have trouble believing that her husband could have molested Dustin, but had later obtained a restraining order and had him leave the home." (Respondent's Exhibit A, Page 7.) Dr. Freedman also indicated that the return of the children to Sally A's home should be conditioned upon her son, Elijah, successfully passing a sexual offender's evaluation. He suggested this prerequisite because Dustin had indicated during the sexual abuse investigation that Elijah had sexually molested him.
As noted above, Sally A. obtained a restraining order against Alfred A. which removed him from the home in September 1996. This order was in place when Dr. Freedman wrote his report in January 1997. However, Sally A. did not attempt to extend the order when it expired in March 1997, and allowed her husband to resume residency in the family home. Elijah did not undergo the recommended sexual offender evaluation. Elijah suffers from Hodgkin's Disease, and Sally A. testified that she did not want to place her son under increased stress by requesting that he undergo sexual offender testing.
Sally A. testified at trial that she allowed Alfred A. to return to the family home in March 1997 because she did not believe that DCF was cooperating with her in the investigation of Dustin's sexual molestation. However, the court does not understand the nature of respondent's reasoning in this regard. When Sally A. asked the Norwich Superior Court to remove Alfred A. from her home in September 1996, she alleged to the court then that he created a risk of safety to the two children who remained in the home. She was aware at that time of the claim that Dustin had been sexually assaulted by Alfred A. The legal guardian's husband had not been eliminated as a suspect when the restraining CT Page 7432 order terminated in March 1997. Indeed, Alfred A. was arrested on serious felony charges related to Dustin's allegations within two months after the restraining order expired and Sally A. allowed him to return to the family home.
Sally A. testified during this trial that she was convinced that the sexual assault of Dustin was committed outside of the State of Connecticut. The court infers from this comment, and from the conduct referred to above, that the respondent does not consider Alfred A. as a suspect, and refuses to address the possibility that he may be responsible for Dustin's sexual abuse. By requesting that the children be returned to live in the same home with the person who is awaiting criminal trial for allegedly sexually molesting Dustin, Sally A. demonstrates a lack of appropriate judgment, and an inability to adequately protect Dustin and Brian.
Dr. Freedman indicated that Sally A. loves both Dustin and Brian, and interacts well with them. He noted in his report that the ". . maternal grandmother showed an excellent relationship and impressive handling of the boys." (Respondent's Exhibit A, Page 7). The psychological evaluation also revealed that the children love their grandmother and have strong attachments with her (Respondent's Exhibit A, Page 9). While the court accepts these conclusions, it also must address the paramount issue of each child's safety. Given the physical evidence which confirms the repeated sexual abuse of Dustin, and the respondent's attitude about the accusations against her husband, it would be totally adverse to the best interests of both children to return them to live under the same roof with Alfred A.
The court finds that DCF has proven by a preponderance of the evidence that it is in the best interests of each child that they be committed to the petitioner. The court hereby commits Dustin C. and Brian C. to the care and custody of the Commissioner of the Department of Children and Families for a period not to exceed 12 months.
ORDERS
In addition to the order committing both children to the petitioner, the court, pursuant to C.G.S. § 46b-121 (b),[3]
issues the following orders:
1. Court Approved Expectations: During trial, DCF admitted CT Page 7433 through its counsel that it was considering the initiation of termination of parental rights petitions which would have the legal affect of severing the legal guardian's involvement with Dustin and Brian. Given Dr. Freedman's very positive report concerning the relationship between Sally A. and her grandchildren, the court believes that such an action is not warranted at this time. Based upon the evidence and testimony at trial, the court finds it in the best interests of both children that Sally A. be afforded a meaningful opportunity to pursue reunification with them. To that end, all parties and counsel are directed to appear for a case conference at the Child Protection Session, Superior Court, 1 Court Street in Middletown on August 28, 1997 at 9:30 a.m. At this conference, the parties and counsel shall agree upon, and submit for approval to the court, written expectations created to facilitate the possibility of reunification between the legal guardian and the minor children. In conjunction therewith, DCF is ordered to provide timely and appropriate rehabilitative services to the respondent, Sally A. At a minimum, the court-approved expectations to which the parties agree shall encompass the following:
 a. The respondent's participation in, and successful completion of, a therapeutic program designed to educate and assist parents or guardians who have failed to protect their children from physical and/or sexual abuse;
 b. The respondent's participation in, and successful completion of such other individual counseling or therapy as DCF deems appropriate;
 c. The respondent's cooperation with visitation, as per the instructions and orders of the court which are delineated below;
 d. The respondent's cooperation with such other conditions or expectations as may be reasonable and necessary to promote the safety and well being of both children.
 2. Visitation: During trial, it was established that DCF has terminated all contact between Sally A. and Dustin and Brian. The decision to end visitation was subsequently upheld by a DCF administrative hearing officer. The court is aware that the petitioner did so out of concern that the grandmother had failed CT Page 7434 to protect the children, and due to inappropriate comments Sally A. allegedly made to both children. Of particular concern was an alleged comment by the legal guardian to Dustin that he should tell the DCF social worker that he lied when he (Dustin) indicated that he had been abused by Alfred A. This comment was allegedly overheard by Dustin's foster parent, who was monitoring a telephone call between the child and his grandmother. The foster parent reported the conversation to DCF.[4] If Sally A. did, in fact, make such a comment, her behavior was inappropriate, and may have violated criminal law. The court directs DCF to report all of the information which it has about this conversation to the office of the State's Attorney for the Judicial District of New London for possible investigation by that agency.
The court has given careful consideration to the testimony and letter of Dustin's therapist, Dr. Ash-Morgan. ( See Petitioner's Exhibit 4). However, based upon Dr. Freedman's evaluation, and particularly his findings concerning the positive relationship between Sally A. and her grandchildren, the court is not convinced that the complete termination of all contact between the respondent and Dustin and Brian is in the best interests of these children. It appears that the petitioner did not consider less drastic measures, such as visitation in a supervised therapeutic environment, coupled with a request for court orders prohibiting the respondent from making inappropriate comments to the children.
The court orders that the issue of possible therapeutic or supervised visitation between Sally A. and Dustin C. be referred to Dr. Freedman for further evaluation, and report to the court. Dr. Freedman is urged to solicit the input of Dr. Ash-Morgan, and others who may have information pertinent to his inquiry. If Dr. Freedman is of the opinion that visitation or contact between Dustin and Sally A. should be reestablished, the petitioner shall prepare and implement a plan for same, consistent with the psychologist's professional recommendations. All such visits or contacts shall be supervised by a person who is a statutorily mandated child abuse reporter.
The court orders that DCF forthwith prepare and implement a plan for regular therapeutic or supervised visitation between Sally A. and Brian C. All such visits shall be supervised by a person who is a statutorily mandated child abuse reporter. CT Page 7435
The court orders that unless she is requested to do so by DCF or the children's therapist, Sally A. shall not in any manner discuss or refer to the allegations against Alfred A., or any matter related thereto, in the presence of either or both minor children.
3. No Contact: The minor children shall have no contact of any kind, direct or indirect, with Alfred A. pending further order of this court. The minor children shall have no unsupervised contact with the respondent's son, Elijah, until such time as he successfully passes a sexual offender evaluation, or until DCF is otherwise satisfied that he poses no threat of physical or emotional harm to either minor child.
4. Testing: Given the nature of the multiple sexual assaults perpetrated upon Dustin, the court believes it prudent that the child be medically tested for the HIV virus. The court orders that DCF forthwith makes arrangements for Dustin to be so tested, or file with the court, within 30 days from the date hereof, the affidavit of a medical professional indicating why such testing is adverse to the best interests of the child, or would otherwise be inappropriate.
5. Physical examination: There was evidence at trial that Dustin made an inconsistent statement about the possible sexual abuse of his younger brother, Brian. The older boy told the North Carolina social worker that Alfred A. never touched Brian, but then said ". . . daddy stuck his ding-ding in Brian's butt." (Petitioner's Exhibit 7, Page 1). Brian told the Connecticut DCF worker that he had not been sexually abused. Dr. Freedman indicated in his report that Brian may not be a reliable reporter, and opined that the only way to determine if Brian had been sexually assaulted would be through physical examination. To the court's knowledge, no such medical examination has ever been performed. Although the court did not find, based upon the evidence presented during trial, that Brian had been abused, the nature of the multiple assaults upon Dustin, as well as Dustin's statement about Brian to the social worker in North Carolina, lead the court to conclude that the younger child should be medically examined. The court orders that DCF shall forthwith make arrangements to have Brian physically examined for medical evidence of possible sexual abuse, or to submit to the court, within 30 days from the date hereof, the affidavit of a medical professional indicating why such an examination is adverse to the best interests of the child, or would otherwise be inappropriate. CT Page 7436
Dated at Middletown, Connecticut this 17th day of July, 1997.
BY THE COURT:
DYER, J.